UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff<br><br>v.<br><br>CHARLES MICHAEL COOPER,<br><br>Defendant. | Case No. 21-CR-070-JFH |

## ORDER

Before the Court is the Motion to Suppress ("Motion") [Dkt. No. 43] filed by Defendant Charles Michael Cooper ("Defendant"). Defendant requests that the following evidence be suppressed at trial: (1) all statements made to law enforcement on August 19-20, 2016, during his custodial interrogation; (2) all statements made to law enforcement on August 30, 2016, during his second custodial interrogation; (3) all data obtained from the search of Defendant's cell phone; and (4) any fruits of the interrogations and cell phone search. Dkt. No. 43 at 1. The Government filed a Response in opposition. Dkt. No. 44. Defendant filed a Reply. Dkt. No. 45. The Court held an evidentiary hearing on September 15, 2021. Dkt. No. 49.

## BACKGROUND

On or about August 16, 2016, Cindy Allen was killed in her home in Ada, Oklahoma. Dkt. No. 1. A State of Oklahoma arrest warrant was issued for Defendant charging him with first degree murder, first degree arson and first degree burglary. .Dkt No. 44 at 2. Defendant was subsequently arrested on August 19, 2016, around 3:30 p.m. by the United States Marshal Service and local authorities in Laurel, Montana. *Id*. at 1. Following his arrest, Defendant was transported to Yellowstone County Detention Center in Billings, Montana. *Id.* at 2.

Around 10:45 p.m. on August 19, 2016, Defendant was interviewed by Oklahoma State Bureau of Investigation ("OSBI") Special Agents Dean and Brown. *Id.* The interview was videotaped and forms the basis of Defendant's Motion to Suppress. *See* Dkt. No. 43-3. The Court has reviewed the pertinent parts of the interview. For the limited purpose of ruling on the Motion, the Court finds the facts as follows:

For approximately the first fifteen (15) minutes Agent Dean gathers biographical information from Defendant and speaks casually with Defendant about his job at a casino and other various things. The following exchange begins around the fifteen-minute mark:

**Agent Dean:** Since you have been arrested, okay, you're sitting in here, I've got to read you your rights. Okay?

**Defendant:** I was waiting on you.

**Agent Dean:** Waiting on you? [inaudible] I usually get all of your personal information from you and all that stuff real quick. Alright. Let me read these to you. Okay. You have the right to remain silent.

**Defendant:** Can I read that with you?

**Agent Dean:** Yeah, yeah, I'll read it to you and then I'll flip it around and [inaudible]. Here. I'll just hold it out here and I'll read it. You have the right to remain silent. Anything you say can and will be used against you in a court of law. You have the right to talk to a lawyer and have him present with you while you are being questioned. If you cannot afford to hire a lawyer, one will be appointed to represent you before any questioning if you wish. If you do decide to make a statement, you may stop at any time. Okay. At any point in time we're sitting here chit-chatting and I ask you a question you don't want to answer it, just say "I don't want to talk about that." You know. I don't want to answer that question. Make sense? Okay. Keeping these rights in mind, do you want to go ahead and talk to me?

**Defendant:** I actually did want to wait on a lawyer.

**Agent Dean:** You want to wait on an attorney?

**Defendant:** [nods head]

**Agent Dean:**  Okay.  Alright.  That's not a problem.  That's your … that is just fine.

**Defendant:**  I've been trying get a phone call [inaudible] scheduled but

**Agent Dean:**  Well, they were waiting on us to get here.

**Defendant:** Oh, okay.

**Agent Dean:**  So we could come talk to you.  Okay.  So, alright, well, that will, we will wrap up what we got then.  Okay.

**Defendant:**  Am I going back with you all or do I gotta stay up here?

**Agent Dean:**  Nope.  You'll stay up here . . . .

Agent Dean then proceeds to explain the extradition process to Defendant for almost a minute.  During this explanation, Defendant expressed a desire to return to Oklahoma but did not ask any additional questions.  At the conclusion of his extradition explanation Agent Dean asks Defendant, "Do you know what all you've been arrested for?"  The following exchange then took place:

**Agent Dean:**  Do you know what all you've been arrested for?

**Defendant:**  [inaudible]  What are the charges?

**Agent Dean:**  First degree murder, first degree arson and first degree burglary.  Okay.  Do you understand any – all those?

**Defendant:**  Um, I do understand all of them.

**Agent Dean:**  Do you have any questions about those?

**Defendant:**  What would um, um, you know, what is it, the

**Agent Brown:**  Sentence?

**Defendant:**  Sentence.

**Agent Dean:**  Your sentence?  Uh first degree murder carries up to death.

**Defendant**:  Life sentence.

3

**Agent Dean:**  Life.  There's life which is forty-five years in the State of Oklahoma.  Okay.  Which is forty-five years.  There's life without parole.  Which is you will spend the rest of your life in jail.  There is no chance of parole.  And then there's the death penalty.

**Defendant:**  Does Oklahoma have the death penalty?

**Agent Dean:**  Oklahoma does have the death penalty.  Yes.

**Defendant:**  [inaudible]  I forgot about that.

**Agent Dean:**  Yeah.  Now, whether the DA's office elects to pursue that, that's up to them.  That's not my decision.  I have nothing, I have nothing to do with that.  Okay, my job is to investigate everything that happened, come talk to you, get your side of the story and then once I turn all of my reports and all that stuff to the DA's office, it's kinda out of my hands from that point.  The DA gets it and they make their decisions.  But the DA wanted me to come up here, uh, visit with you to see if you wanted to make a statement, talk to us, and see what we could get figured out.

**Defendant:**  Well, you know what, since you said I could stop whenever, whenever I want, you can go ahead and question me a little bit.

**Agent Dean:**  Okay.

**Defendant:**  I mean, I don't want to waste y'alls time.

**Agent Dean:**  Well, okay.  That's - it's all up to you.

Agent Dean then proceeds to reiterate Defendant's rights to him.  Defendant executed a rights waiver and Agent Dean questioned Defendant for over three (3) hours.

## ANALYSIS

Defendant argues his statements to the OSBI Agents must be suppressed because Agent Dean and Agent Brown impermissibly continued their interrogation after Defendant invoked his right to counsel.  *See* Dkt. No. 43 at 6-12.  Under *Miranda*, law enforcement officers must advise a suspect who is subjected to custodial interrogation that he has the right to remain silent, that statements can be used against him, that he has the right to counsel, and that he has the right to

4

have counsel appointed. *Miranda v. Arizona,* 384 U.S. 436, 467-73 (1966). The Supreme Court has explained:

> [A]n accused . . . having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police. *Miranda* itself indicated that the assertion of the right to counsel was a significant event and that once exercised by the accused, "the interrogation must cease until an attorney is present."

*Edwards v. Arizona,* 451 U.S. 477, 484-85 (1981) (quoting *Miranda,* 384 U.S. at 474). It is a "bright-line rule" that questioning may only resume if a lawyer is provided or the suspect himself reinitiates communication with law enforcement. *United States v. Giles,* 967 F.2d 382, 386 (10th Cir. 1992). If the police subsequently initiate an encounter in the absence of counsel, the suspect's statements are presumed involuntary, even where the suspect executes a waiver. *McNeil v. Wisconsin,* 501 U.S. 171, 177 (1991). This rule is designed to prevent police from badgering a suspect into waiving his previously asserted *Miranda* rights. *Id.* "The only exception to this bright-line rule is where the accused initiates the conversation with police." *Giles*, 967 F.2d at 386. "[I]f the accused invoked his right to counsel, courts may admit his responses to further questioning only on finding that he (a) initiated further discussions with the police, and (b) knowingly and intelligently waived the right he had invoked." *Smith v. Illinois*, 469 U.S. 91, 95 (1984).

I. **Invocation of the Right to Counsel**

First, the Court must determine whether the Defendant invoked his Fifth Amendment right to have counsel present at questioning. *Giles,* 967 F.2d at 385. To invoke his right, the suspect must have made "some statement that can reasonably be construed to be expression of a desire for the assistance of an attorney in dealing with custodial interrogation by the police." *Id.* Whether a

5

suspect unambiguously requested counsel is an objective inquiry. *United States v. Santistevan,* 701 F.3d 1289, 1292 (10th Cir. 2012).

Here, the Government concedes the Defendant unequivocally invoked his right to counsel. Dkt. No. 44 at 3. The Court agrees. Defendant's statement, "I actually did want to wait on a lawyer" was an unambiguous, unequivocal invocation of his right to counsel.

## II.    Continuation of Questioning After Invocation

Therefore, the Court must now determine if Defendant reinitiated communication with law enforcement or if the OSBI Agents impermissibly continued to interrogate Defendant. "[B]efore a suspect in custody can be subjected to further interrogation after he requests an attorney there must be a showing that the 'suspect himself initiates dialogue with the authorities.'" *Oregon v. Bradshaw,* 462 U.S. 1039, 1044 (1983) (quoting *Wyrick v. Fields,* 103 S. Ct. 394, 395 (1982) (*per curiam*)).

> But even if a conversation taking place after the accused has "expressed his desire to deal with the police only through counsel," is initiated by the accused, where reinterrogation follows, the burden remains upon the prosecution to show that subsequent events indicated a waiver of the Fifth Amendment right to have counsel present during the interrogation.

*Bradshaw,* 462 U.S. at 1044. The Supreme Court has provided guidance on a similar situation:

> There can be no doubt in this case that in asking, "Well, what is going to happen to me now?", respondent "initiated" further conversation in the ordinary dictionary sense of that word. While we doubt that it would be desirable to build a superstructure of legal refinements around the word "initiate" in this context, there are undoubtedly situations where a bare inquiry by either a defendant or by a police officer should not be held to "initiate" any conversation or dialogue. There are some inquires, such as a request for a drink of water or a request to use a telephone that are so routine that they cannot be fairly said to represent a desire on the part of an accused to open up a more generalized discussion relating directly or indirectly to the investigation. Such inquiries or statements, by either an accused or a police officer, relating to routine incidents of the custodial relationship, will not generally "initiate" a conversation in the sense in which that word was used in *Edwards.*

*Id.* at 1045.

When engaging in the re-initiation analysis, courts also examine whether the law enforcement officer ceased the questioning in such a way as to even provide the defendant with an opportunity to initiate further questioning or actively continued the interview. *See United States v. Rambo*, 365 F.3d 906, 911 (10th Cir. 2004).  The Tenth Circuit explained,

> The Government contends that it was [the defendant] who reinitiated communication after invoking his right to remain silent and, therefore, [the law enforcement officer] was not required to terminate the interview.  That argument ignores [the law enforcement officer's] role in continuing the interview after [the defendant] invoked his rights.  When [the defendant] stated that he did not want to discuss the robberies, [the law enforcement officer] made no move to end the encounter.  Instead he acknowledged [the defendant's] request, but told [the defendant] that he would be charged with two aggravated robberies and that other agencies would want to speak with [the defendant].  Those comments reflect both further pressure on [the defendant] to discuss the crimes and a suggestion that despite [the defendant's] present request to terminate discussion of the topic, he would be questioned further.

*Rambo*, 365 F.3d at 911.  One district court has held that a defendant "could not 'reinitiate' communication with the agent because the agent never stopped the conversation in the first instance."  *United States v. Rosenschein,* 369 F. Supp. 3d 1147, 1157 (D.N.M. 2019); *see also United States v. Lujan,* No. 15-CR-205, 2015 WL 13651126, at *6 (D.N.M. December 1, 2015) (recognizing "a significant distinction between cases in which the police immediately halt their interrogations after the invocation of *Miranda* rights, and the contrary situation … in which the interrogation did not cease").

In the instant case, the Government argues Defendant's question is analogous to the question asked in *Bradshaw* and "evinced a willingness and a desire for a generalized discussion about the investigation." *Bradshaw*, 462 U.S. at 1045-46; *see also* Dkt. No. 44 at 4-5.  Thus, Defendant effectively waived his invocation of his right to counsel by asking Agent Dean if he was going to stay in Montana or go back to Oklahoma with the OSBI agents. *See* Dkt. No. 44 at 4-5.  However, this case is distinguishable from *Bradshaw*.  In *Bradshaw*, the defendant invoked

7

his right to counsel and the "officer immediately terminated the conversation." *Bradshaw,* 462 U.S. at 1041-42.

> Sometime later respondent was transferred from the Rockaway Police Station to the Tillamook County Jail, a distance of some ten or fifteen miles. Either just before, or during, his trip from Rockaway to Tillamook, respondent inquired of a police officer, "Well, what is going to happen to me now?" The officer answered by saying "You do not have to talk to me. You have requested an attorney and I don't want you talking to me unless you so desire because anything you say – because – since you have requested an attorney, you know, it has to be at your own free will." Respondent said he understood. There followed a discussion between respondent and the officer concerning where respondent was being taken and the offense with which he would be charged.

*Id.* at 1042.

In contrast, here, there was never a break in the dialogue from the time Defendant invoked his right to counsel to when the Defendant ultimately indicated he would speak with the OSBI Agents without an attorney present. The OSBI Agents never left the room. The Defendant did ask one question of the OSBI Agents when they said they would terminate the interview. Defendant asked, "Am I going back with you all or do I gotta stay up here?"

Based upon the guidance provided by the *Bradshaw* Court, the Court concludes this question was "routine" and "cannot be fairly said to represent a desire on the part of the accused to open up a more generalized discussion relating directly or indirectly to the investigation." *Bradshaw*, 462 U.S. at 1046. Defendant had been in custody for approximately seven (7) hours at this point and had not been afforded a phone call yet. This question was a reasonable, routine, administrative question and not an indication that Defendant wanted to speak further with the OSBI Agents about the case. All Agent Dean had to say in response was that the Defendant would not be returning to Oklahoma with the OSBI Agents but would remain in Montana. At this point, the conversation should have been over. Instead, Agent Dean provided a lengthy answer regarding extradition and went on to ask Defendant more questions.

"Interrogation" under *Miranda* refers not only to express questioning, but also its "functional equivalent" – that is, any words or actions on the part of the police "that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Rosenschein,* 369 F. Supp. 3d at 1157 (quoting *Rhode Island v. Innis,* 446 U.S. 291, 301 (1980)). Agent Dean did not immediately end the interview after Defendant unambiguously invoked his right to counsel. Instead, Agent Dean played an active role in continuing the interview by: 1) providing a lengthy explanation regarding extradition; 2) asking Defendant, without being provoked, "do you know what all you've been arrested for?", "do you understand any – all those?", and "do you have any questions about those?"; 3) leading to a discussion about the possible sentence, including that Defendant could potentially face the death penalty; and 4) explaining that the district attorney would make the decision if the death penalty is pursued and that district attorney sent him to see if Defendant wanted to make a statement. It was only at this point that Defendant capitulates and states that the OSBI Agents could go ahead and question him "a little bit."

Defendant clearly and unequivocally expressed his desire to wait for counsel before being questioned. Thereafter, there was no meaningful break in the interrogation. While Defendant asked whether he was going back to Oklahoma with the agents, or staying in Montana, this was a routine question that did not open a generalized discussion about the investigation. Moreover, after a lengthy answer to Defendant's routine question, it was Agent Dean that re-directed the interrogation back to a general discussion of the investigation with the question about the nature of the charges on which Defendant has been arrested. The "bright-line rule" of *Miranda* cannot be overlooked. The Court concludes Agent Dean's active role in continuing the interview by

posing unsolicited questions, which incorporated explanation on the possible punishments, constituted impermissible interrogation after Defendant invoked his right to counsel.

### III. Defendant's Wavier

Because the Court has concluded that Defendant did not reinitiate generalized communication with the OSBI Agents about the investigation, it need not determine whether his subsequent waiver of *Miranda* rights was voluntary. *Smith v. Illinois*, 469 U.S. at 95. "Once a defendant has invoked his right to counsel, if the police initiate an encounter in the absence of counsel, the suspect's statements are presumed involuntary, even where a suspect executes a waiver." *Rosenschein,* 369 F. Supp. 3d at 1158 (citing *McNeil,* 501 U.S. at 177). The fact that Defendant later waived his right to counsel and spoke to the OSBI Agents does not change or cure the initial violation of his right to counsel. *Id.*

### CONCLUSION

Having concluded that Defendant invoked his Fifth Amendment right to counsel and Defendant did not re-initiate communication with the OSBI Agents, the Court concludes that Defendant's constitutional rights were violated by the OSBI Agents continuing the interview.

**IT IS THEREFORE ORDERED** that the Motion to Suppress [Dkt. No. 43] filed by the Defendant Charles Michael Cooper is **GRANTED IN PART.** Defendant's statements made to law enforcement on August 19-20, 2016 during his custodial interrogation shall be suppressed. It is further ordered that all data obtained from the search of Defendant's cell phone shall also be suppressed.

**IT IS FURTHER ORDERED**, based upon the Government's Response [Dkt. No. 44] and the record at the evidentiary hearing, that Defendant's request that statements made to law enforcement on August 30, 2016 be suppressed is **DENIED AS MOOT.**

**IT IS FURTHER ORDERED** that Defendant's request that any fruits of the unconstitutional August 19-20, 2016 interrogation be suppressed is **DENIED WITHOUT PREJUDICE**. Defendant has not identified any specific evidence to be suppressed. Should the Defendant identify specific evidence to be suppressed, the Court will consider Defendant's request.

DATED this 19th day of November 2021.

_____
JOHN F. HEIL, III
UNITED STATES DISTRICT JUDGE